UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **VOLKSWAGEN GROUP OF AMERICA, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A,**<br><br>**Defendants.** | Civil Action No. 1:20-cv-01437-LO-MSN |

**REPORT & RECOMMENDATION**

This matter comes before the Court on plaintiff Volkswagen Group of America, Inc.'s ("plaintiff" or "VW") Motion for Default Judgment (Dkt. No. 74). This motion seeks default judgment against the defendants identified in plaintiff's updated List of Defendants Subject to Plaintiff's Motion for Default Judgment ("Defendants"). (Dkt. No. 82); *see* Addendum A. Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends entering default judgment in plaintiff's favor for the reasons that follow.

**I.     PROCEDURAL HISTORY**

On November 20, 2020, plaintiff filed its complaint, alleging defendant "unincorporated associations listed in Schedule A of the complaint" had committed Trademark Infringement and Counterfeiting (15 U.S.C. § 1114), False Designation of Origin (15 U.S.C. § 1125(a)) and Trademark Dilution (15 U.S.C. § 1125(C)). (Dkt. No. 1). On the same day, plaintiff moved for a temporary restraining order seeking a freeze of the accounts used by defendants in their alleged counterfeiting activities. (Dkt. No. 14). Plaintiff also simultaneously filed a motion for service by

1

publication or email, as defendants were believed to be located in China and had concealed their physical addresses. (Dkt. No. 17, 18). The motion for alternate service was granted on December 3, 2020. (Dkt. No. 28). The Court granted plaintiff's motion for a temporary restraining order on January 26, 2021. (Dkt. No. 31). Plaintiff dismissed eight defendants on February 23, 2021. (Dkt. No. 38). Plaintiff moved for a preliminary injunction on February 25, 2021 (Dkt. No. 46), and it was granted following a telephonic hearing (Dkt. No. 56). Plaintiff filed a notice of service, indicating that defendants were served by email with the verified complaint, individual summonses, and order on alternate service, on February 25 and 26, 2021. (Dkt. No. 58). On March 25, 2021, plaintiff filed a stipulation of dismissal following settlement with an additional fourteen of the defendants (Dkt. No. 60), which was ordered on April 5, 2021 (Dkt. No 64). The same day, plaintiff requested entry of default as to the remaining defendants. (Dkt. No. 61).

On April 19, 2021, an attorney entered an appearance for defendants cartoolfty and ecartool2015 (Dkt. No. 65), and on April 23, 2021 they filed an answer and affirmative defenses (Dkt. No. 67). The answer was admitted *nunc pro tunc* by the Court on April 26, 2021. (Dkt. No. 68). On May 19, 2021, an attorney entered an appearance on behalf of 35 defendants. (Dkt. No. 69). On June 9, 2021, plaintiff filed an amended request for entry of default, removing the two defendants who had answered the complaint. (Dkt. No. 70). The Clerk of Court entered default on June 10, 2021. (Dkt. No. 73). On June 11, 2021, plaintiff filed the instant motion for default judgment. (Dkt. No. 74). On July 12, 2021, the plaintiff filed another stipulation of dismissal, indicating settlement had been reached with numerous defendants (Dkt. No. 78) and the dismissal was ordered by the Court (Dkt. No. 80). On July 20, 2021, plaintiff provided notice to the Court identifying which defendants were subject to the instant motion to default judgment. (Dkt. No. 82); *see* Addendum A.

## II.     FACTUAL BACKGROUND

The following facts are established by plaintiff's complaint (Dkt. No. 1) as well as by the memorandum in support of its motion for default judgment (Dkt. No. 75).

Plaintiff Volkswagen Group of America, Inc. ("VW") is organized under the laws of New Jersey with a principal place of business in Herndon, Virginia. (Dkt. No. 1) at 3. VW polices, promotes, and enforces Audi, Volkswagen, Bentley, and Lamborghini trademarks and brands in the United States. *Id.* Volkswagen is the owner of numerous federally registered trademarks for Volkswagen automobiles, parts, and accessories. *Id.* at 5-6. It has exclusively and continuously used the marks for more than 50 years. *Id.* at 6. These marks are world famous and are incontestable. *Id.* at 6-7. Volkswagen also owns Audi's numerous federally registered trademarks, which have similarly have been used exclusively and continuously for decades, are known worldwide and incontestable. *Id.* at 7-11. The same is true of the federally registered Bentley and Lamborghini trademarks. *Id.* at 11-12, 13-15. (Collectively, the "VW marks").

Defendants are selling counterfeit versions of plaintiff's proprietary "ODIS" software believed to bear the VW brand marks. *Id.* at 15. This software allows diagnosis of VW brand automobiles and provides information about the vehicle data, manuals, diagrams, and product information. *Id.* Defendants are selling the ODIS software for substantially lower prices than the genuine product through sellers such as eBay, AliExpress, and Wish. *Id.* at 18. Plaintiff reviewed each of the defendant stores' offerings for authenticity and determined them to be counterfeit (the counterfeit products are depicted (Dkt. Nos. 8, 9, 10)).

Defendants knowingly manufacture, offer for sale, and sell counterfeit products with the VW marks and use measures to conceal their true identities. *Id.* at 17. Defendants offer to ship goods into this judicial district. *See* (Dkt. Nos. 11, 12, 13). Defendants are believed to reside in

3

China and other countries outside the United States. *Id.* at 16. They have used measures to conceal their identities by using fictitious names, addresses, and creating numerous different online stores. *Id.* at 19-20.

### III. JURSIDICTION, VENUE, AND SERVICE OF PROCESS

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. This Court has subject matter jurisdiction over individual defendants under 28 U.S.C. § 1331, as this case includes claims that arise under federal law, and this Court additionally has jurisdiction over trademark and copyright matters pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a).

This Court has personal jurisdiction over individual defendants through the Virginia Long Arm Statute which "extends the jurisdiction of its courts as far as federal due process permits." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002); Va. Code Ann. § 8.01-328.1. In determining the requirements of due process for nonresident internet defendants, the Fourth Circuit applies *Zippo Manufacturing Co.*'s sliding scale approach. *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002) (citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)). The Fourth Circuit has adopted the following standard: due process allows personal jurisdiction over a person who "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714. The Courts look to the "interactivity and commercial nature of the exchange of information that occurs on the Web site" when considering the first two factors. *Zippo*, 952 F. Supp at 1124.

In this case, defendants are residents of this district, as their principal place of business is in Herndon, Virginia. (Dkt. No. 1) at 3. Additionally, defendants have reached into the district through their commercial websites. *See* (Dkt. Nos. 11, 12, 13). Defendants interactive website is accessible and marketed to residents of Virginia. *Id.* Plaintiff accessed the sellers stores where there was an offer to ship the products into this district. Venue is proper under 28 U.S.C. § 1391(b)(3) because the defendants are subject to the court's personal jurisdiction. *Id.*

The undersigned finds that plaintiff properly served defendants. Plaintiff filed a Motion for Service by Publication or Email on November 20, 2020, and the Court granted the motion on December 3, 2020. (Dkts. 17, 28). Plaintiff then complied with the Court's Order and served defendants by email on February 25 and 36, 2021. (*See* Dkt. 58).

## IV.  STANDARD FOR DEFAULT JUDGMENT

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505

(E.D. Va. 2009)). Here, because defendants have not answered or otherwise timely responded, the well-pleaded allegations of fact contained in the complaint are deemed to be admitted.

V. ANALYSIS

A. Trademark Infringement

Plaintiff alleges that the defendants committed Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114. To prove trademark infringement, plaintiff must show "(1) that it owns a valid and protectable mark; (2) the [defendants] used a re-production, counterfeit, copy, or colorable imitation of that mark in commerce and without [plaintiff's] consent; and (3) that [defendants'] use is likely to cause confusion." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259 (4th Cir. 2007) (internal citations omitted).

First, the plaintiff is the exclusive licensee of the VW marks, which are properly federally registered. (Dkt. No. 1) at 5-6, 7-10, 11-12; *See Brittingham v. Jenkins,* 914 F.2d 447, 452 (4th Cir.1990) ("a certificate of registration of a mark serves as prima facie evidence that the registrant owns the registered mark, has properly registered it under the Lanham Act, and is entitled to its exclusive use in commerce").

Taking plaintiff's well pleaded allegations as true, individual defendants have used a reproduction of the marks in commerce without plaintiff's consent by displaying them in association with their counterfeit ODIS software sales and on their counterfeit software. (Dkt. No. 1) at 15, 19. Plaintiff asserts that all of the individual defendants worked in concert, rendering them each liable for the infringing marks. Because defendants have not responded to these well pleaded allegations, the Court must accept them as true.

The last factor is whether defendants' use of plaintiff's trademarks is likely to cause confusion. The Fourth Circuit established a list of seven non-exclusive factors to consider when

6

determining if a product creates a likelihood of confusion: "(1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods/services the marks identify; (4) the similarity of the facilities the two parties use in their businesses; (5) the similarity of the advertising used by the two parties; (6) the defendant's intent; and (7) actual confusion." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). These factors are not always weighed equally and not all factors are relevant in every case. *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006).

The *Pizzeria Uno* factors weigh in favor of finding that defendants' use of plaintiff's trademarks cause confusion. Under the first factor, plaintiff's marks are distinctive and famous. The VW marks are very well known and hundreds of millions of dollars are spent annually on marketing and promotion of the brands. (Dkt. No. 75) at 13. The marks are known world-wide. *Id.* Under the second factor, defendants created exact replicas of plaintiff's trademarks to sell their counterfeit products. (Dkt. No. 1) at 16. When the parties are using identical marks, there is a presumption that a likelihood of confusion exists. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). Third, defendants' products are marketed as genuine ODIS software to be used with VW branded vehicles. *Id.* at 15, 18-19. Sixth, defendants clearly intended to mislead consumers and create a fraudulent association between the counterfeit software and the VW brands, as defendants are using exact replicas of the marks. Finally, under the seventh factor, defendants assert that the purchases of the products indicate actual customer confusion. (Dkt. No. 75) at 14-15.

Accordingly, because plaintiff has established all elements, the undersigned recommends a finding that defendants committed Trademark Infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**B.      Trademark Counterfeiting**

Plaintiff additionally alleges trademark counterfeiting under the Lanham Act. For a claim of trademark counterfeiting, a plaintiff must show that: "(1) the defendant intentionally used a counterfeit mark in commerce; (2) the defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offering for sale, or distribution of goods, and (4) the use of the counterfeit mark was likely to confuse consumers." *Associated Gen. Contractors of Am. v. Stokes*, No. 1:11-cv-795, 2013 U.S. Dist. LEXIS 38680, at *3 (E.D. Va. Mar. 19, 2013). Specifically, a counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Here, plaintiff has sufficiently alleged that defendants used counterfeit reproductions of the VW marks to sell their counterfeit software. (Dkt. No. 1) at 15. Defendants deliberately replicated the marks, using images that were identical or indistinguishable, and knew they were counterfeit. *Id.* Defendants used the counterfeit marks in the sale of software and their intention was to confuse consumers and create a false association between the VW brands and the product. *Id.* Plaintiff asserts that all of the defendants worked in concert, rendering them each liable for the counterfeit marks. Because defendants have not responded to these well pleaded allegations, the Court must accept them as true.

Accordingly, the undersigned recommends a finding that defendants committed Trademark Infringement and Counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

 **C.**  **False Designation of Origin**

A party is liable for false designation of origin if the use of the mark "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods,

services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). For a false designation of origin claim, a plaintiff must prove that (1) it has a valid, protectable mark and (2) the defendant's use of a colorable imitation of the mark is likely to cause confusion among consumers. *See Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc*., 673 F.3d 294, 300 (4th Cir. 2012).

Here, plaintiff has valid, protectable marks, as demonstrated through their federal registration of those marks. (Dkt. No. 1) at 5-6, 7-10, 11-12. Defendants used the VW marks without authorization to sell their software. *Id.* at 15. By using replicas of the VW marks, they created a misleading representation that the VW brands sponsored or created the counterfeit products. Plaintiff asserts that their intention was to confuse and create an association with the VW brands. *Id.* They did this commercially through their online stores that offered for sale and sold the counterfeit software. *See* (Dkt. Nos. 11, 12, 13). These facts are taken as true, as defendants have failed to respond.

Accordingly, plaintiff has sufficiently established a claim for False Designation of Origin under the Lanham Act (15 U.S.C. § 1125).

### D.      Trademark Dilution

Plaintiff asserts that defendants have diluted the VW marks by tarnishment. To establish dilution by tarnishment, this Court must determine whether the "similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). The owner of the mark is entitled to injunctive relief if a mark or trade name is used in commerce that is "likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1).

The VW brands' marks are famous and distinctive and have a reputation for quality and performance. (Dkt. No. 1) at 24. The VW marks are used and known globally and have been federally registered. *Id.* at 5-6, 7-10, 11-12. Defendants sell unlicensed and unauthorized counterfeit versions of plaintiff's proprietary ODIS diagnostic software, taking advantage of the VW brands' good will. *Id.* at 18. Plaintiff asserts these counterfeit software downloads are cheaper and low-quality, which tarnishes the VW brand marks and violates their trademark rights. *Id.* at 19.

Accordingly, plaintiff has sufficiently established a claim for Trademark Dilution under the Lanham Act (15 U.S.C. § 1125).

## VI.     REQUESTED RELIEF

Plaintiff seeks permanent injunctive relief under the Lanham Act and statutory damages for trademark counterfeiting. The undersigned considers each of plaintiff's request for relief in turn below.

### A.     Injunctive Relief

Plaintiff seek a permanent injunction enjoining defendants from infringing or otherwise violating plaintiff's registered trademark rights under the Lanham Act. Section 1116(a) provides that district courts have the power to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered with the Patent and Trademark Office." 15 U.S.C. § 1116(a). The Copyright Act similarly provides that the district courts can "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502.

In considering whether to grant a permanent injunction, courts consider (1) whether the plaintiff has suffered an irreparable injury; (2) whether remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, whether a remedy in equity is warranted; and (4) whether the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Plaintiff suffered harm to its goodwill from being associated with a questionable counterfeit software. (Dkt. No. 1) at 21. To prevent further use of the images and marks, money damages are an inadequate remedy, as the instrumentalities would remain in defendants' possession, and future damages would be speculative. The balance of equities favors plaintiff, as a permanent injunction would merely require defendants to cease their illegal conduct. Finally, the public interest is served by eliminating the consumer confusion caused by the misleading use of the image and marks. Because of the nature of defendants' ongoing infringement, the undersigned finds it appropriate to recommend that a permanent injunction be granted.

**B.    Statutory damages for trademark counterfeiting**

Under the Lanham Act, the court "has wide discretion to determine an appropriate award of statutory damages. . . ." *Mya Saray, LLC v. Al-Amir*, 831 F. Supp. 2d 922, 941 (E.D. Va. 2011). Under 15 U.S.C. § 1117(c), plaintiffs who are found to have their mark counterfeited may opt for statutory damages of not less than $1,000, and when willful conduct is involved, not more than $2,000,000 per counterfeit mark. Under 15 U.S.C. § 1117(b)(1), treble damages, prejudgment interest and attorney's fees are proper if the counterfeit mark is knowingly used in the sale or distribution of goods. "Infringement is willful if a defendant has knowledge that its conduct represented infringement or recklessly disregarded the possibility." *Mya Saray*, 831 F. Supp. 2d at 941 (internal citations omitted). District courts frequently award maximum statutory damages

11

to "deter others engaged in selling counterfeit goods, particularly those whose marketplace is the internet." *See e.g.*, *Montblanc-Simplo GmbH v. Ilnitskiy*, No. 1: 17-cv-415, 2018 U.S. Dist. LEXIS 25146, at *18-19 (E.D. Va. Jan. 25, 2018) (adopted at Dkt. No. 44) (awarding $32,000,000.00 in maximum statutory damages for trademark counterfeiting) (citing *Diane Von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356, 2007 U.S. Dist. LEXIS 78915, at *6 (E.D. Va. Oct. 23, 2007) (the court "must take into account the need to deter others engaged in selling counterfeit goods, particularly those whose marketplace is the internet")).

Plaintiff asserts that all of the individual defendants worked in concert, rendering them each liable for the counterfeit marks. Defendants willfully employed the VW marks to sell their counterfeit ODIS software downloads. Plaintiff states that each defendant used at least one word mark and one design mark for each of the four VW brands. (Dkt. No. 75) at 16. This, they argue, amounts to statutory damages of $16,000,000 per defendant. Because defendants have not responded to these well pleaded allegations, the Court must accept them as true. Due to the willful bad faith use of plaintiff's mark to sell counterfeit software, the undersigned recommends that damages of $16,000,000 be imposed upon each defendant for use of the trademark.

Plaintiff also seeks that this judgment be fulfilled in whole or in party by the assets frozen by the preliminary injunction in defendants' Paypal, Inc. and Alipay accounts. Plaintiff claims this is the only effective means by which to collect any judgment from the defendants as other assets are likely located in China and defendants have kept their identities well hidden. Plaintiff has cited a large number of cases from this district that have similarly transferred proceeds from frozen accounts. *See, e.g.*, *Ontel Products Corporation v. Unincorporated Ass'ns*, Case No. 1:20-cv-01124-LO-TCB (Dkt. No. 74) (E.D. Va. Mar. 19, 2021).

## VII.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends:

1. Granting plaintiff's Motion for Entry of Default Judgment (Dkt. No. 74);

2. Permanently enjoining defaulting defendants from making, using, selling, or offering for sale unauthorized products containing plaintiff's trademarks;

3. Granting a monetary judgment of $2,000,000 as to each count, entered separately against each of the defaulting defendants that infringed plaintiff's marks, totaling $16,000,000 per defendant;

4. Ordering that PayPal, Inc. release to plaintiff the monies currently restrained in the defaulting defendants' financial accounts as partial payment of the above-identified damages within five (5) business days of receipt of this Order;

5. Ordering that Alipay US, Inc. shall release to plaintiff the monies currently restrained in the defaulting defendants' financial accounts as partial payment of the above-identified damages within five (5) business days of receipt of this Order; and

6. Ordering that, until plaintiff has recovered full payments of monies owed to it by any defaulting defendants, plaintiff shall have an ongoing authority to serve this Order on PayPal and Alipay in the event that any new PayPal or Alipay accounts controlled or operated by the Defaulting defendants are identified. Upon receipt of the Order, PayPal and Alipay shall, within two (2) business days:

    a. Locate all accounts and funds connected to the defaulting defendants or the defaulting defendants Internet Stores, including those listed in the memorandum of law in support of plaintiff's Motion;

    b. Restrain and enjoin such accounts or funds that are not U.S. based from transferring or disposing of any money or other of the defaulting defendants' assets; and

    c. PayPal shall release all monies restrained in the defaulting defendants' PayPal accounts to plaintiff as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

    d. Alipay shall release all monies restrained in the defaulting defendants' Alipay accounts to plaintiff as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

## VIII. NOTICE

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendants at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

July 21, 2021
Alexandria, Virginia

**ADDENDUM A**

| No. | Platform | Seller ID/Defendant Store | Defendant Email |
|---|---|---|---|
| 1 | eBay | amazool | jackyway0101@gmail.com<br>madbuyshop@gmail.com<br>sales@amazool.com<br>sales@ecostings.com<br>sales@gadgetys.com<br>sales@nrebate.com<br>sales@u-wholesale.com<br>sales@ucomshop.com |
| 11 | eBay | obd-tek | wistonqxq@yahoo.com |
| 15 | Wish | July Miracle, Almighty Girl | z1741478366@126.com |
| 21 | AliExpress | Accucar Tech Co.,Ltd Store | ppdatool3@yeah.net |
| 22 | AliExpress | AI CAR FUN AUTORADIO Store | happylld@outlook.com |
| 32 | AliExpress | Automotive locksmith supplier Store | info@gr8locks.com |
| 34 | AliExpress | AutoRepair 2 Store | info@gr8locks.com |
| 35 | AliExpress | Beacon Machine Store | fairybeaconmachine@foxmail.com |
| 37 | AliExpress | Build Your Car Fun Store | shengfuuli@outlook.com |
| 38 | AliExpress | Buy ECUTOOL Store | ecutool2020@yahoo.com |
| 39 | AliExpress | BuyFromOBDFactory Store | factoryobd2@gmail.com |
| 43 | AliExpress | Car Repair Tool 2019 Store | 1058751705@qq.com |
| 44 | AliExpress | Car Repair tool Store | ppdatool2@yeah.net |
| 46 | AliExpress | carfix Official Store | autolinktool@aol.com |
| 48 | AliExpress | carobd2 device Store | cnbnbk@yeah.net |
| 53 | AliExpress | CWAUTO Store | vkauto@outlook.com |
| 55 | AliExpress | DHOBD Supplier Store | 182514058@qq.com |
| 56 | AliExpress | Diagnostic tool Specialty Store | obdatsmt@163.com |
| 58 | AliExpress | DROBD Store | drobd01@163.com |
| 62 | AliExpress | ECUTOOL Store | xcarkeys@gmail.com |
| 64 | AliExpress | EKETOOL CarCare Store | eketool@163.com |
| 67 | AliExpress | Flx Car Electric Store | 627592691@qq.com |
| 69 | AliExpress | fossiauto Store | store02@fossi.cn |
| 70 | AliExpress | gamesalor fashion | fashionstore2050@hotmail.com |
| 71 | AliExpress | Garage666888 Store | ababy2953@qq.com |
| 72 | AliExpress | GoCar GoCar Store | gocargocar@163.com |
| 75 | AliExpress | ITCARDIAG Direct Store | shirui@itcardiag.com |
| 79 | AliExpress | KWIOBD Store | kewei008@aliyun.com |
| 80 | AliExpress | LOGASMART Autogas OBD2 Tools Store | |

| | | | |
|---|---|---|---|
| | | | sales1@chinalogas.com |
| 82 | AliExpress | Marscare Store | 14462086@qq.com |
| 85 | AliExpress | MOTOBD Store | carlimo@126.com |
| 87 | AliExpress | Newswan Tool & Instrument 04 Store | store04@newswan.com |
| 89 | AliExpress | OBD Discount Store | obddiscount@163.com |
| 93 | AliExpress | obd2 car diagnostic Store | autoolsales@yeah.net |
| 94 | AliExpress | OBD2 Device Store | ppdatool@yeah.net |
| 95 | AliExpress | OBD2 Diag Tools Store | seller02@kingobdtool.com |
| 97 | AliExpress | OBD2 OBDII Store | 3465181099@qq.com |
| 98 | AliExpress | OBD2 Store | 1871141631@qq.com |
| 103 | AliExpress | OBDCAR Store | obdtool520@qq.com |
| 107 | AliExpress | OBDII diag Store | uautoscanner@yeah.net |
| 110 | AliExpress | Obdiiwholesale Co.,Ltd. | obdiiwholesale8@hotmail.com |
| 119 | AliExpress | professional obd store--best after sale service | 1464716871@qq.com |
| 120 | AliExpress | Professional OBD Tool Store | 1464716871@qq.com |
| 124 | AliExpress | ReDiag Store | rediag@163.com |
| 129 | AliExpress | SHENZHEN YTCARTOOL Store | zhuoyaodaxian@126.com |
| 132 | AliExpress | Shop5082400 Store | 1917997297@qq.com |
| 134 | AliExpress | Shop5590031 Store | qimopei2020@outlook.com |
| 135 | AliExpress | Shop5881255 Store | 2428905425@qq.com |
| 136 | AliExpress | SmartCBest EasyHand Store | zolichina51@hotmail.com |
| 139 | AliExpress | SZ KingOBDTool Store | zoe@kingobdtool.com |
| 140 | AliExpress | TENZUN Factory Store | obdarthur@outlook.com |
| 141 | AliExpress | TENZUN OBD2 Store | obdpro@outlook.com |
| 142 | AliExpress | TEST TOOL FACTORY Store | 123681852@qq.com |
| 144 | AliExpress | TotG Store | daikougenqq@outlook.com |
| 146 | AliExpress | TruckDiagnosis Store | 2355650315@qq.com |
| 149 | AliExpress | Vaylas Diagnosis & Timing Store | sales@hauvrex.com |
| 151 | AliExpress | VK Automative | obd2store@hotmail.com |
| 152 | AliExpress | VXDIAG Direct Store | vxdiagnano@163.com |
| 154 | AliExpress | Xin Shun Commercial Store | q646620733@163.com |
| 155 | AliExpress | xingobd2 Store | sandy@chdobd2.com |
| 156 | AliExpress | YIYUN Diag Store | rugesuiyuenihao@sina.com |
| 157 | AliExpress | ZRIGO TECH Store | zrigoo@outlook.com |